**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DVISION**

| | |
|---|---|
| **CRYSTAL AYON A/N/F M.R.A., A MINOR,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO. 1:21-cv-00209** |
| **AUSTIN INDEPENDENT SCHOOL DISTRICT, CESAR MALDONADO,** *Individually,* **CLAUDIA SANTAMARIA,** *Individually,* **DETECTIVE ALEX PHILLIPS,** *Individually,* **POLICE CHIEF ASHLEY GONZALEZ,** *Individually,* **and ROGELIA LOPEZ,** *Individually,* | **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY** |
| *Defendants.* | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF THE COURT:**

      **COMES NOW CRYSTAL AYON, A/N/F OF M.R.A., A MINOR,** Plaintiff, in the above styled and numbered cause, and files this, Plaintiff's Original Complaint, complaining of the Austin Independent School District, Cesar Maldonado, *Individually,* Claudia Santamaria, *Individually,* Detective Alex Phillips, *Individually,* Police Chief Ashley Gonzalez, *Individually,* and Rogelia Lopez, *Individually,* Defendants, and would respectfully show unto this Honorable Court the following:

## I. INTRODUCTION

      1.    This case is brought by Crystal Ayon, mother of a minor child, M.R.A., for damages resulting from the repeated sexual assault and molestation of M.R.A. by a school bus driver, Cesar Maldonado (hereinafter referred to as "Defendant Maldonado"), employed by Austin Independent

School District (hereinafter referred to as "AISD").  Rogelia Lopez (hereinafter referred to as "Defendant Lopez") was the AISD school bus monitor responsible for ensuring that inappropriate activity was monitored, prevented, reported and/or responded to in accordance with AISD policies. Defendant Claudia Santamaria ("Defendant Santamaria") was responsible for reviewing the school bus video tapes to ensure students were safe from would-be predators like Defendant Maldonado.

2.      M.R.A, only five years old at the time, endured months of sexual abuse even though bus camera footage clearly captured the abuse and, upon information and belief, Defendant Lopez knew of the abuse.  The bus camera footage was either not reviewed or, horrifically, viewed[1] and ignored by Defendant Claudia Santamaria.  This failure to protect students from sexual assault is a systematic pattern and practice of AISD.  Defendants' actions violated the Constitutional rights of the minor child, M.R.A, and her mother.  This lawsuit seeks relief for the harm caused by Defendants' unlawful actions arising from violations of M.R.A.'s federal civil rights committed by the named Defendants.

3.      AISD employed law enforcement officers Police Chief Gonzalez and Detective Phillips who created an atmosphere of sexual harassment and probability of future sexual assaults for multiple deliberately indifferent failures to properly investigate and prosecute prior sexual assault cases at AISD prior to the instant case.

4.      This action seeks actual damages, compensatory damages, punitive damages, attorneys' fees, taxable costs of court, pre-judgment and post-judgment interest, and equitable relief as allowed by law for Defendants' violations of the United States Constitution, made actionable by 42 U.S.C. §1983 and by Title IX, 20 U.S.C. §§ 1681-1688.

5.      This action also seeks actual damages, compensatory damages, punitive damages,

---

[1] Pursuant to FRCP 8 Plaintiff's demands for relief may include relief in the alternative (including alternate sets of plausible facts) or different kinds of relief.

taxable costs of court, pre-judgment, and post-judgment interest as allowed by law, for each Individual Defendant's tortious conduct under state law.

6.    Plaintiff demands a jury trial on all issues triable to a jury.

## II.    PARTIES

7.    Plaintiff, CRYSTAL AYON, A/N/F OF M.R.A., A MINOR ("Plaintiff"), is an individual and citizen of the State of Texas, residing in Austin, Travis County, Texas.

8.    Defendant, AUSTIN INDEPENDENT SCHOOL DISTRICT ("Defendant AISD"), is, and at all times herein mentioned was, a political subdivision of the State of Texas operating within Austin, Travis County, Texas. Defendant AISD is responsible for the policies, practices, and customs of its school district, as well as the hiring, training, supervision, control, and discipline of its employees. Defendant AISD was the employer of Defendants Lopez, Maldonado, and Santamaria at all times material to this suit. Defendant AISD can be served by and through its District Superintendent, Stephanie S. Elizalde, at the office of the School Board at 1111W. Sixth Street, Austin, Texas 78703.

9.    Defendant Cesar Maldonado, Individually (referred to hereinafter as "Defendant Maldonado"), is currently incarcerated in a Texas state prison. At all times material to this suit, he was employed as a bus driver by AISD. Each of the acts complained of arise from the conduct of Defendant Maldonado while acting under the color of state law and were committed within the scope of his employment with AISD. Defendant Maldonado is sued in both his individual capacity and in his official capacity as an employee of the Austin Independent School District. Defendant Maldonado can be served at the Texas Department of Criminal Justice Michael Unit at 2664 FM 2054, Tennessee Colony, Texas 75886.

10.    Defendant Rogelia Lopez, Individually ("Defendant Lopez") is a resident of the

State of Texas.  At all times material to this suit, she was employed as a bus monitor by AISD. Each of the acts complained of arise from the conduct of Defendant Lopez while acting under the color of state law and were committed within the scope of her employment with AISD.  Defendant Lopez is sued in both her individual capacity and in her official capacity as an employee of AISD. Defendant Lopez can be served at 10012 Anahuac Trail, Austin, Texas 78748.

11.    Defendant Claudia Santamaria, Individually ("Defendant Santamaria") is a resident of the State of Texas.  At all times material to this suit, she was employed as an assistant principal by AISD.  Each of the acts complained of arise from the conduct of Defendant Santamaria while acting under the color of state law and were committed within the scope of her employment with AISD.  Defendant Santamaria is sued in both her individual capacity and in her official capacity as an employee of AISD.  Defendant Claudia Santamaria can be served at 1928 Antone St., Austin, Texas 78723.

12.    Defendant Detective Alex Phillips, Individually ("Defendant Phillips") is an employee of the AISD Police Department.  He may be served through AISD President, Geronimo Rodriguez, at 4000 S. I-H Frontage Rd., Austin, Texas 78704.

13.    Defendant Police Chief Ashley Gonzalez, Individually ("Defendant Gonzalez") is an employee of the AISD Police Department.  He may be served through AISD President, Geronimo Rodriguez, at 4000 S. I-H Frontage Rd., Austin, Texas 78704.

### III.    JURISDICTION AND VENUE

14.     Pursuant to 28 U.S.C. § 1331, the court has original, federal question jurisdiction over Plaintiff's 42 U.S.C. § 1983 and Title IX claims against Defendants.  The Court has supplemental jurisdiction over the state law claims in this suit pursuant to 28 U.S.C. § 1367(a) because such claims are so related to the federal claims in that all of such federal and state claims

form part of the same case or controversy under Article III of the United States Constitution.

15.    Venue is proper in this cause in the Western District of Texas, pursuant to 28 U.S.C.
§ 1391(b)(2), because all or a substantial part of the events or omissions giving rise to this cause
of action occurred in a county under the Austin Division, Western District of Texas.

## IV.    FACTUAL BACKGROUND

### A. DEFENDANT MALDONADO'S SEXUAL ASSAULT OF M.R.A.

16.    Plaintiff, Crystal Ayon, is the mother of M.R.A, a minor child.  M.R.A. was five
(5) years old at the time of the occurrences described herein.  M.R.A. attended Uphaus Early
Childhood Center in the Austin Independent School District during the time period of the
occurrences described herein, beginning on or about March 1, 2018 and continuing through May
23, 2018.  Every day M.R.A. would ride the bus to school to receive an education.

17.    At all material times, AISD was receiving federal funding, as contemplated by Title
IX, 20 U.S.C. § 1681, et seq. for its activities including financial aid and research grants, among
other sources.  The activities of AISD and these Defendants affects interstate commerce.

18.    Defendant Maldonado was the AISD bus driver that drove M.R.A. to and from
school every day.  Beginning at least as early as March 1, 2018, Defendant Maldonado engaged in
a series of sexual assaults of M.R.A.

19.    At all times relevant to this action and on all occasions of sexual assault by
Defendant Maldonado of M.R.A, the school buses[2] driven by Maldonado were equipped with
video recording devices that captured and recorded the activities of the students, the bus monitor,
and the bus driver.  Upon information and belief, the video recording devices installed on the buses
were intended to ensure the safety, welfare, and rights of children in the care of Defendant AISD.

---

[2] Maldonado drove AISD bus #1064 primarily, but also drove bus #0550 temporarily while his primarily assigned bus was inactive for repairs.

20.     Defendant Santamaria was responsible as a representative of AISD and acting under color of state law to review school bus camera footage to ensure the safety, welfare, and rights of M.R.A.  Upon information and belief, in March of 2018, and possibly before, Defendant Santamaria and/or someone working under the direct supervision of this Defendant, witnessed the molestation of M.R.A. but did not report the incident as law requires.  Prior to the sexual assault of M.R.A., Defendant Santamaria left Maldonado alone with the bus children despite her belief sexual improprieties may be occurring by Maldonado. Alternatively, upon information and belief, Defendant AISD's policy, as promulgated by Defendant Santamaria and other AISD policymakers such as the Board of Trustees was to leave all video footage from school buses unreviewed until an incident was reported, showing deliberate indifference to welfare and Constitutional rights of its students, including M.R.A.  Due to this breach of duty, Defendant Maldonado's molestation of M.R.A. continued.

21.     At all times relevant to this action, and on all occasions of sexual assault by Defendant Maldonado of M.R.A, the school bus driven by Defendant Maldonado included a bus monitor, Defendant Lopez.   Upon information and belief, Defendant Lopez's presence was intended to ensure the safety, welfare, and rights of children in the care of Defendant AISD.  Upon further information and belief, in March of 2018, and possibly before, Defendant Lopez witnessed the molestation of M.R.A., but did not report the incident as law requires.  Alternatively, Defendant Lopez knew or should have known that Defendant Maldonado would molest M.R.A. when she exited the bus, and acting under color of state law, demonstrated deliberate indifference to the Constitutional rights of students, such as M.R.A.  Due to this breach of duty, the molestation continued.

22.     In the months prior to May 2018, Plaintiff reported to AISD's principal that her

daughter's bus was arriving late in the evenings, sometimes up to 30 minutes after its scheduled arrival time. Concerned, Plaintiff called AISD to report the issue, but AISD took no action to remedy or dispel concerns. Despite Plaintiff's repeated complaints, AISD dismissively assured Plaintiff that such delays were of no importance. Further, AISD seemed unfamiliar with Maldonado and the routes he used when Plaintiff called to report her concerns. Again, this conduct exhibits further deliberate indifference to the rights of Plaintiff and her child's safety.

23.    On May 29, 2018, the AISD Police Department ("AISD PD") received a report of a bus driver who inappropriately touched a female student. The AISD Police Department dispatched an officer to the Uphaus Early Childhood Center at 5200 Friedrich Lane, Austin, Texas 78744.

24.    Officer Daryl Seagrave's AISD Police Department report #18-001707 ("Report") concerned the statements made by M.R.A.'s parents, Plaintiff and Joaquin Rodriguez-Escobar. M.R.A.'s parents reported out-of-character behavior that M.R.A. had begun exhibiting during the two (2) weeks preceding the date of the Report. Plaintiff reported that M.R.A. would become extremely distraught and cry each morning before boarding her school bus. Plaintiff additionally reported that M.R.A. expressed fear of using the restroom, to the point that M.R.A. urinated in the family room of the family's residence.

25.    Preceding the Report made to the AISD Police Department, Plaintiff stated that M.R.A. told Plaintiff that "the driver touched [her]." The driver to whom M.R.A. referred was Maldonado. When Plaintiff inquired as to where Maldonado touched M.R.A., M.R.A. indicated her vagina.

26.    Following notification of the allegations against Maldonado, the AISD Police Department obtained the surveillance camera hard drives from AISD bus #1064 and AISD bus

#0550 from Defendant AISD.  Reportedly, these hard drives and the video footage contained therein had not been reviewed or analyzed at any time during the period from March 1, 2018 to May 29, 2018, the date the AISD Police Department acquired them.  In the alternative, if the footage was reviewed or analyzed during that period, no action was taken by Defendant AISD with respect to the content of the footage.  Upon information and belief, at some points during the abuse, only two of the four cameras on the buses were operational, evidencing further deliberate indifference to their utility in protecting the rights of Plaintiff and her child.  Upon further information and belief, there were over 500 video files that were not fully reviewed until over a month after M.R.A.'s initial outcry.  Deliberately ignoring their own policies and procedures to protect the children on buses, the abuse was permitted to continue.

27.    Detective Alex Philips was assigned to the file on June 13, 2018.  However, Detective Phillips was "in training" and not scheduled to return to duty until Jun 21, 2018.

28.    On July 3, 2018, Defendant Maldonado advised Detective Philips that Defendant Maldonado planned to leave the country for vacation.  Incredibly, Detective Philips did not insist on interviewing the bus driver identified as the sexual abuser prior to Defendant Maldonado's stated departure date from the country.  The AISD PD did not conduct any interview with the accused until August 8, 2018 – 71 days after M.R.A.'s outcry.

29.    The August 10, 2018 Probable Cause Affidavit prepared by Detective Phillips recounts several observable instances of sexual assault committed by Maldonado against M.R.A. on various dates and times.  Detective Phillips has been employed by AISD PD since 2002.  Upon information and belief, he does not possess any specialized training in sexual assault or sexual misconduct investigation.  Despite this fact, Detective Phillips is routinely assigned to investigate sex crimes for AISD PD.

30.    The observable instances of sexual assault were captured by the cameras in the AISD school buses and stored on Defendant AISD hard drives until such hard drives were obtained by the AISD Police Department.  A summary of said instances[3] follows herein: .

31.    **May 17, 2018**:        Bus monitor Lopez exits the school bus when it arrives at Uphaus Early Childhood Center, leaving Maldonado alone on the bus with the minor students, including five (5) year-old M.R.A.  Maldonado closes the doors to the bus.  Approximately one (1) minute later, Maldonado is seen walking from the driver's seat to M.R.A.'s seat on the second row of the bus, where M.R.A. is seen laying down with her head near the aisle of the bus. Maldonado is seen reaching to M.R.A.'s prone mid/lower region, with his right arm and shoulder moving back and forth in the vicinity of M.R.A.'s mid/lower region.  Maldonado is seen to look back over his left shoulder.  After approximately 30 seconds, Maldonado is observed to stop this activity, and stand up straight, hovering over M.R.A.  Seconds later, Maldonado is seen to lean back down, and Maldonado's right arm and shoulder is again seen moving back and forth in the same mid/lower region of M.R.A.'s body.  Approximately two (2) minutes elapse during the period in which Maldonado's arm is observed moving back and forth in the vicinity of M.R.A.'s mid/lower region.  During this time, the Defendant AISD's school bus cameras capture Maldonado looking over his shoulder approximately thirteen (13) times.  This footage was not reviewed prior to these incidents being reported to the AISD Police Department, or alternatively, this footage was reviewed by Defendant Santamaria or another AISD representative and no action was taken.

32.    **May 21, 2018**:        Bus monitor Lopez again exits the school bus when it arrives at the school.  Maldonado is observed to sit to M.R.A.'s right as she sits in her seat while covered with a blanket.  Maldonado is observed to cover himself with M.R.A.'s blanket, pulling M.R.A.

---

[3] Due the secret nature of child sexual assault, HIPPA, and school privacy laws Plaintiff believes more examples of child sexual assault will be found in discovery .

toward him with his left arm.  Maldonado's shoulder and arm can be seen moving on the left side of M.R.A.'s body.  This footage was not reviewed prior to these incidents being reported to the AISD Police Department, or alternatively, this footage was reviewed by Defendant Santamaria or another AISD representative and no action was taken.

33.    **May 23, 2018:**        Bus monitor Lopez again exits the school bus when it arrives at the school.  M.R.A. is seen lying on her seat, with her head near the aisle of the bus.  Maldonado is seen to act as if he is sitting on M.R.A.'s head, commenting to other students on the bus as he does so.  Maldonado is seen to reach over M.R.A. with his right arm.  Maldonado's arm is seen to be positioned over M.R.A.'s mid/lower region, moving back and forth.  Maldonado is then observed to leave M.R.A. and her seat for approximately one (1) minute before returning.  Maldonado is again seen to reach over M.R.A.'s mid/lower region while moving his right arm back and forth.  Maldonado is seen leaving M.R.A. a second time before again returning to resume his conduct for a third time.  Maldonado is seen leaving M.R.A. a third time before again returning to resume his conduct for the fourth time.   While Maldonado's hand is seen positioned over M.R.A.'s mid/lower region, Maldonado is observed to look over his shoulder approximately four (4) times.  Maldonado is seen to leave M.R.A.'s seat for the fourth time and is observed using his left hand to adjust his genitals from the outside of his shorts.  This footage was not reviewed prior to these incidents being reported to the AISD Police Department, or alternatively, this footage was reviewed by Defendant Santamaria or another AISD representative and no action was taken.

34.    M.R.A. was forensically interviewed at the Center for Child Protection on June 13, 2018.  Maldonado originally denied M.R.A.'s allegations, but recanted that denial on August 8, 2018.  On that date, Maldonado met with Corporal Alex Phillips and admitted that he had touched M.R.A.'s genitals through her clothing several times.  Maldonado stated that this conduct began

in **March of 2018**.  Maldonado estimated that he had touched M.R.A.'s vaginal area on ten (10) occasions.  Maldonado stated that when the school bus would arrive at school, Lopez would leave the bus, and he would approach M.R.A.'s seat on the bus and molest her.

35.    At no point during the AISD PD's investigation did AISD inform Plaintiff of her rights to pursue a Title IX complaint, and at no point did AISD direct Plaintiff to the school's Title IX Coordinator.  Further, AISD never provided Plaintiff with a list of remedies that M.R.A. was entitled to under Title IX as a victim of sexual assault.

36.    AISD and the Board has a pattern and practice of ignoring and not reporting acts of molestation in addition to ignoring concerned parents when they raise concerns.  It was not until M.R.A. mustered up enough courage to tell her parents what happened that something was done to stop Defendant Maldonado.  Yet, AISD still did not act.  It was not until police investigation and intervention that AISD, finally, was forced to act. Maldonado and other AISD children molesters were aware of AISD's neglect.

37.    AISD did not monitor or supervise its school bus monitors to verify if the monitors were with the students and school bus driver at all times.  AISD and the Board failed to create any policies regarding school bus monitors and their supervision and training which addressed leaving school bus drivers alone with students like M.R.A.  AISD and the Board failed to implement policies for review of the school bus cameras and for review of those charged with reviewing the camera footage.

### B.    AISD HAS HAD AMPLE NOTICE OF THE RISKS OF SEVERE HARM TO ITS STUDENTS

38.    In addition to the facts stated above, Defendant AISD has exhibited a pattern of deliberate indifference for years.  In 2013 and 2014, another AISD employee molested children on an ongoing basis.  This teacher, Alfredo Andrade-Gaytan, molested multiple students, sometimes

during school hours and in the middle of his classroom.  Gayton was sentenced to twenty-five (25) years in prison for the sexual abuse of three students.  The AISD Board of Trustees ("the Board") was fully aware of these incidents.  The AISD Board of Trustees is the elected governing board of AISD in charge of the policies, practices, and procedures.

39.    After the discovery of Gayton's crimes, Defendant AISD and its Board members were put on notice of the need to monitor and supervise AISD employees' interactions with students.  Parents at the school where Gayton taught called for cameras to be installed in the classroom.[4]  Defendant AISD and its Board knew what it had to do to ensure the safety and wellbeing of its students.  Defendant AISD knew of the consequences that could result if it left students unmonitored and unsupervised with its employees.  Yet, Defendant AISD remained deliberately indifferent to adopting, implementing, and enforcing policies that would protect its students.

40.    In 2015, a 6 year-old child was sexually assaulted on an AISD bus by an AISD bus driver, Ralph Leon Young.  The sexual assault of this minor child occurred on an ongoing basis from April 25, 2014 to April 17, 2015.  It was not until two juvenile witnesses reported the sexual assault of the minor child that any attention and action was brought to the heinous acts occurring on the AISD school bus.  The Board was fully aware of these incidents.[5]  Around May 11, 2015 an AISD official statement circulated to the members of the Board stated:

> The safety and security of all students is the top priority at Walnut Creek Elementary School. It is with regret that we inform the public about a warrant that has been issued for the arrest of an AISD bus driver on a charge of aggravated sexual assault, for an incident involving a Walnut Creek Elementary School

---

[4] Daily Mail Reporter, *Texas teacher charged with sexually assaulting six-year-old kindergarten who 'kept her in the classroom while the others were on recess*, DAILY MAIL (June 20, 2014 12:41 P.M.), https://www.dailymail.co.uk/news/article-2659161/Texas-teacher-charged-sexually-assaulting-kindergarten-student.html (last visited Apr. 28, 2020).

[5] KVUE Staff, *Bus driver accused of assaulting students out on bond*, KVUE (May 11, 2015 5:16 P.M.) https://www.kvue.com/article/news/education/bus-driver-accused-of-assaulting-students-out-on-bond/152555822 (last visited Apr. 28, 2020).

student. The bus driver was terminated April 27. Counseling and other student support services will be available on campus for students, families and staff.

*Id.* On May 8, 2015 Board President Gina Hinojosa stated in her empty promise: "It should never happen once. Unfortunately, something bad happened here and we're doing everything to make sure that doesn't happen again."

41.     While each and every member of the 2017 Board was aware of the Gayton and Young sexual assaults, the following individuals were members of the board during the aforementioned events: Jayme Mathias, Amber Elenz, and Ann Teich.

42.     In the Leon Young case, the AISD bus driver's acts were witnessed by an AISD Assistant Principal, Juan Zea.  Zea witnessed the AISD bus driver sexually assaulting the minor child but did not report the incident.  Due to the failure of this AISD official to report the sexual assault, the minor student continued to be sexually assaulted on an ongoing basis.  It was not until two students reported the sexual assaults on April 17, 2015 that AISD investigated.  Even then, the AISD bus driver was not fired until April 27, 2015 - 10 days after the sexual assaults were reported.  Young was later convicted and sentenced to thirty (30) years in prison. The Board was fully aware of these incidents.

43.     After the sexual assault of the minor AISD student in 2015, Defendant AISD installed cameras on every bus.  "The newer model school buses at Walnut Creek have cameras on board but the bus involved in the alleged assault did not, according to [Eric] Mendez, [AISD police chief].  He said since the incident, all buses have been replaced with ones that are equipped with cameras."[6]

44.     Defendant AISD's reaction to the sexual assault of the minor student was to install cameras on all buses in the school district.  Defendant AISD, including the Board, knew that if its

---

[6] *Id.*

buses were not monitored, its students were vulnerable when alone with AISD employees. Instead of implementing a policy of monitoring the AISD buses proactively to prevent what had occurred before, Defendant AISD left the camera footage unreviewed until harm had already occurred and had been reported. The sexual assault and harm of M.R.A was an entirely predictable consequence of the failure of AISD and the Board to adopt a policy of reviewing the camera footage from the buses and actually monitoring the activity therein.

45.     An April 27, 2017 media article points to the reopening of three additional sexual assault cases by students that were at least inadequately investigated and at worst deliberately not investigated properly. In 2017 Austin Independent School District police officers renewed their review of three different cases of alleged sexual assault at three Austin schools. Parents of a Lanier High Schooler say AISD police closed the investigation of their daughter's claim too soon after she said a fellow student assaulted her in the bathroom in 2015. In 2014 at Hart Elementary, a boy said a school staff member assaulted him in a bathroom. These cases came to light after parents of a 4-year-old girl demanded school police reopen their case in 2017, saying medical records showed signs of sexual assault which happened at Boone Elementary in the AISD.[7]

46.     In the Hart Elementary School case, a Kindergartener reported to a parent that a cafeteria worker had touched the student's genitals in a restroom at the school. After speaking to the Kindergartener and the parent, an AISD Police Officer went to Hart Elementary and reported that no pertinent evidence existed on the school's surveillance video, and AISD would therefore decline to pursue an investigation. After a hospitalization due to pain resulting from the assault, AISD Detective Phillips met with the Kindergartner. Detective Phillips told the mother that since

---

[7] Tina Shively, *Austin ISD police re-opening three sexual assault cases*, KVUE (Apr. 27, 2017 10:20 P.M.), sexual assault which happened at Boone Elementary in the AISD. https://www.kvue.com/article/news/local/austin-isd-police-re-opening-three-sexual-assault-cases/434770053 (last visited Apr. 28, 2020).

the Kindergartener could not provide a specific enough description of the individual, AISD PD's investigation would be officially closed.

47.    In the Lanier High School case, a high school freshman student was sexually assaulted after being forced into a restroom stall on April 1, 2015, by a fellow student.  The freshman told a classmate about her attack, who promptly reported the assault to the Lanier High School Staff.  Surveillance footage of the incident was reportedly watched by AISD police officers, which declined to investigate the incident further because the exact date and time of the assault was unclear, and therefore, they could not find evidence of the assault.  Where the video footage did not conclusively prove the assault took place, AISD and AISD PD declined any further investigation, despite having notice of the assault on its campus.

48.    The Boone Elementary School case, resulted in a lawsuit filed originally filed in the United States District Court in the Western District of Texas on May 2, 2017.  The Complaint in this case is attached hereto as **Exhibit 1**, and Plaintiff hereby incorporates its contents as if fully restated herein.

49.    In this case, the minor student was involved the in Pre-Kindergarten 3 Program at the school, and as such, AISD had complete control over the minor.  On February 7, 2017, after spending 3 hours at school, the minor student was picked up by her mother, who soon discovered that the child's genitals were bruised and bleeding, and that her undergarments were soaked in blood.  The minor was admitted surgery that evening for treatment of "vaginal trauma" and "emergent surgical repair of her vaginal lacerations."  The minor's surgeon diagnosed the cause of the injuries as sexual assault.

50.    AISD Detective Phillips reportedly opened an investigation into the minor's assault on February 7, 2017.  On February 20, 2017, the minor identified her Teacher as her attacker, and

her mother contacted Detective Phillips, who indicated that the Teacher had not yet been interviewed despite being put on administrative leave on February 8, 2017.  On February 22, 2017, a classmate of the minor's indicated that she too had been assaulted by the same Teacher.

51.     Incredibly, AISD closed the minor's case on February 28, 2017, citing insufficient evidence to continue investigation.  AISD PD never processed the minor's rape kit collected at the hospital.  AISD allowed the Teacher to return to Boone Elementary on March 20, 2017.  AISD and AISD PD never provided an explanation of their findings related to the alleged sexual assaults. Upon information and belief, this accused sexual predator still teaches in the AISD school system.

52.     Upon dismissal by motion of the original Boone Elementary School Plaintiff, that Plaintiff, as well as representatives for the Hart Elementary School victim, the Lanier High School Victim, and the second Boone Elementary School victim filed a joint Complaint in the Western District of Texas on May 25, 2020.  This Complaint is attached hereto as **Exhibit 2**, and incorporated by reference as if fully restated herein.

53.     Detective Phillips has demonstrated a pattern of concluding such investigations quickly, thereby depriving victims of remedies and accommodations owed them as victims of sexual assault, and condoning a culture within AISD that sexual assaults are not investigated.

54.     Upon information and belief, M.R.A.'s protracted assaults and the foregoing examples represent a mere sample of the cases of sexual assault swept under the rug, or ignored by Defendants and those acting in concert.  AISD and the Board had full knowledge of the prior sexual assaults committed by its employees in 2013, 2014, 2015, and 2017. Yet, despite this knowledge, Defendant AISD and the Board did not adopt, implement, or enforce a policy that would protect M.R.A.  Further, upon information and belief, AISD did not notify the parents of all other students on Maldonado's bus when M.R.A.'s allegations were made, nor did AISD notify

the parents that those allegations had been confirmed.

55.    Cameras were installed on all AISD buses but either the footage was reviewed and no action was taken, or the footage was not watched until after incidents were reported. Defendants' actions to remedy the hostile educational environment in response to reports of sexual assault were inadequate and/or completely insufficient.  AISD and AISD PD have repeatedly demonstrated their absolute reliance on video footage to corroborate student reports of abuse, yet AISD has not taken the crucial steps to develop, adopt, implement, or enforce policies and procedures to review this footage for misconduct and/or report misconduct when it was uncovered. Maldonado knew that the bus camera footage was not being reviewed, and he knew that he could continue to assault M.R.A. or any other student.

56.    The AISD Board was informed of all the child sexual assaults which occurred at AISD schools as well as the subsequent investigations.

**C.    AISD's Reactive Policies Enacted to Protect its Students were So Inadequate as to Constitute Deliberate Indifference**

**i.    AISD's policy was to only review bus camera footage after an incident had been reported**

57.    From March 1, 2018 to May 29, 2018, Defendant AISD and the Board had everything it needed to stop Defendant Maldonado from committing these heinous criminal acts. Instead, its policy was to let to let the video footage from the bus sit unreviewed ***until after an incident was reported***.[8]  Defendant AISD's failure to actively review the video footage from its buses constitutes deliberate indifference to protecting the children that depend on AISD for safe transport.

---

[8] Lauren Reid, *AISD Police Chief Comments on Bus Driver Accused of Sexually Assault Child*, Fox 7 Austin ( August 13, 2018), https://www.fox7austin.com/news/aisd-police-chief-comments-on-bus-driver-accused-of-sexually-assaulting-child (last visited Apr. 28, 2020)

58.    Defendant AISD including the Board knew exactly what it had to do to protect the children on its school buses and what was at stake.  AISD including the Board knew of the prior sexual assaults of its students in 2013, 2014, and 2015.  Defendant AISD including the Board knew these sexual assaults were committed by AISD employees in unsupervised and unmonitored buses and classrooms.  AISD installed cameras on all of its buses in response to the 2015 sexual assault of a student that occurred on a bus.

59.    Defendant AISD's director of transportation, Kris Hafezizadeh said in response to the Board adding new cameras on its buses in 2016, "***We want to know what goes on inside of our buses***."[9] He did not condition this goal by saying "after a crime is committed."  Instead, Defendant AISD and the Board looked the other way, essentially using the cameras as scarecrows, and waiting until the sexual assault of M.R.A was reported to see what was going on inside of its buses in a reactive versus proactive policy.  The heinous harm that M.R.A was subjected to was an entirely foreseeable consequence of not monitoring and supervising what occurred on AISD buses as evidenced by the purpose of the cameras alone.  Had Defendant AISD been proactive, it could have prevented the harm to M.R.A. had it actually reviewed the camera footage to truly see what was going on in its buses.

60.    Alternatively, if Defendant Santamaria and/or another AISD representative reviewed the camera footage during the period where Defendant Maldonado repeatedly assaulted M.R.A., no action was taken to stop the assaults or protect AISD students from a sexual predator. This conduct resulted in repeated assaults of M.R.A. and possibly other students to this date.

**ii.    AISD's policy was to require only one adult to be on the bus with students**

61.    AISD buses have on board both a bus driver and a bus monitor.  Upon information

---

[9] Kevin Schwaller, *Board approves new cameras for AISD school buses*, KXAN Austin (2016), https://www.kxan.com/news/board-approves-new-cameras-for-aisd-school-buses/amp/ (last visited Apr. 28, 2020).

and belief, the bus monitor's presence was intended to ensure the safety, welfare, and rights of children in the care of Defendant AISD.  The bus monitor is tasked with reporting any problems or concerns that occur on the bus.  Defendant AISD's policy, ***despite the presence of a bus monitor, is to only require one adult on board the bus at all times and it was widespread practice that monitors would leave the students with the bus driver***.[10]  Such a policy and custom inadequately supervises and monitors AISD employees, as is evidently clear from the assaults perpetrated against M.R.A.  Not requiring the bus monitor to remain on the bus, in conjunction with AISD's policy to only review camera footage after an incident is reported illustrates the District's and Board's deliberate indifference to the safety of its students on its school buses.

62.    The bus monitor on M.R.A.'s bus was Defendant Lopez.  Upon information and belief and subject to further discovery, Ms. Lopez was not on board on any of the occasions upon which Defendant Maldonado sexually assaulted M.R.A.  On all of these occasions, Defendant Lopez was escorting other children off of the bus and into the school.  However, upon information and belief, Defendant Lopez had knowledge of the inappropriate and horrific actions undertaken by Defendant Maldonado on M.R.A.  Nonetheless, Defendant Lopez did nothing to stop Defendant Maldonado.  Defendant Maldonado took advantage of this policy and assaulted M.R.A. in Defendant Lopez's absence.  Furthermore, it was a well-known and well-established custom at AISD that bus monitors may leave the bus driver alone with the AISD students.  Many AISD bus monitors left bus drivers alone with students prior to the sexual assaults and molestations of M.R.A.

63.    Defendant AISD's policy of having a bus monitor on board along with the driver was inadequate to protect M.R.A.  Despite this policy of having a bus monitor, Defendant AISD

---

[10] *See* Reid, *supra* note 8

also only required for one adult to be on board the bus with students.  After AISD employees sexually assaulted students in 2013, 2014, and 2015, Defendant AISD knew of the consequence of having its employees alone, unmonitored, and unsupervised with AISD students.  Instead of adopting a policy of having the bus monitor stay with the bus driver at all times, Defendant AISD's policy left Defendant Maldonado alone with M.R.A. without the presence of another adult. Subsequently, the predictable consequence of leaving a student alone, unmonitored, and unsupervised with an AISD employee enabled M.R.A.'s assaults.  This harm was foreseeable and predictable, and it could have been prevented but for Defendant AISD's and the Board's deliberate indifference to adopting effective policies to protect M.R.A.

> ### iii.   AISD's deliberate indifference in adopting policies that would protect M.R.A. resulted in predictable harm

64.    Defendant Maldonado sexually assaulted M.R.A. for months while acting under the color of state law and employed by AISD as a bus driver.  AISD—and its School Board—had all the evidence it needed on the bus cameras to put an end to these heinous acts, yet its policy was to let the camera footage sit unreviewed until an incident was reported.  AISD's policy of letting this camera footage sit unreviewed and unmonitored is deliberate indifference.  The 2013, 2014, and 2015 sexual assaults of AISD students by AISD employees put Defendant AISD on actual notice of the harm that can occur when AISD employees are allowed to be alone, unsupervised, and unmonitored with students.  Yet, Defendant AISD's reactive policy of installing cameras, but not actually watching footage from the cameras, undercuts any steps it tried to take after the prior sexual assaults in 2013, 2014, and 2015.  Alternatively, if Defendant Santamaria and/or another AISD representative reviewed the camera footage during the period where Defendant Maldonado repeatedly assaulted M.R.A., no action was taken to stop the assaults or protect AISD students from a sexual predator.  As a result, M.R.A. was sexually assaulted for months by Defendant

Maldonado.

65.    Defendant AISD and the Board had notice of the harm that can happen to its students when they are left with AISD employees alone, unsupervised, and unmonitored. Defendant AISD's policy of having a bus monitor ride on board with the bus driver and students was meant to ensure the welfare and safety of students.  Yet, Defendant AISD only required one adult to be on board with the students at all times.  This policy undercuts the purpose of AISD's bus monitors.  As a result, Defendant Maldonado took advantage of Defendant AISD's deliberate indifference and waited until Defendant Lopez left the bus to sexually assault M.R.A.

> **iv.    AISD did not refer Plaintiff, on M.R.A.'s behalf, to the school's Title I coordinator, nor did it apprise her of M.R.A.'s rights as a victim of sexual assault**

66.    The AISD staff never referred Plaintiff to the School District's Title IX Coordinator, even after the staff learned of the allegations.   Further, AISD never provided M.R.A. with the various remedies to be afforded to her as a victim of sexual assault.  These remedies are due a claimant of sexual harassment regardless of whether the harassment is confirmed. Incredibly, in M.R.A.'s case, though the protracted period of abuse was in fact confirmed by video evidence, AISD still did not provide M.R.A. with the resources due to her.

## V.    CLAIMS FOR RELIEF

### A.    42 U.S.C. § 1983

67.    Plaintiff incorporates by reference all the foregoing allegations contained in all paragraphs above as fully set forth herein.

68.    Under the Fourteenth Amendment, M.R.A. had the right as a public school student to be free from damage to her bodily integrity and free from sexual assault by school employees. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1997).

69.    At all times material to this suit, Defendant Maldonado was a state actor acting under the color of state law and employed by Defendant AISD.  At all times material to this suit, Defendant Maldonado was employed in a position of state employment and was placed in control, by virtue of his position of state employment, of the bus which M.R.A. took to school.  At all times material to this suit, Defendant Maldonado acted in his official capacity and abused the state control and authority he possessed by virtue of his being a state actor under the color of state law.

70.    Defendant Maldonado violated M.R.A.'s rights to her bodily integrity by sexually assaulting her on an ongoing basis from March 1, 2018 to May 23, 2018.

71.    Defendant AISD and the Board subjected M.R.A. to violations of her rights to bodily integrity by failing to investigate Defendant Maldonado's heinous actions, failing to supervise Defendant Maldonado, and manifesting deliberate indifference to the ongoing sexual assault of M.R.A. by failing to adopt and effectuate policies that would have protected her from the harm complained of herein.

72.    Defendant AISD has unconstitutional customs or policies of, at least: (1) failing to investigate evidence of criminal acts against AISD students in the nature of violations of their right to personal security and bodily integrity;  (2) failing to supervise AISD employees with regard to maintaining, preserving, and protecting students from violations of their right to bodily integrity; (3) deliberate indifference to the conduct Defendant Maldonado and other prior predatory AISD employees by failing to adopt and effectuate policies that would have prevented such actions; (4) allowing monitors to leave students alone with bus drivers; (5) failing to review school bus videos; (6) failure to monitor monitors; and (7) failure to monitor school bus drivers.

73.    AISD at the Board had notice and knowledge of a pattern of sexual assaults that occurred in 2013, 2014, and 2015 when its employees were left alone, unsupervised, and

unmonitored with its students, yet AISD never adopted a sufficient policy to prevent or stop such acts. AISD's reactive policies of installing bus cameras and placing bus monitors onboard buses was undercut by AISD's own deliberate indifference to the safety and bodily integrity of its students, including M.R.A. AISD's policy was to not review the bus camera footage until an incident was reported and its contradictory policy to place a monitor on each bus, but only requiring the presence of one adult on the bus at all times. These two policies resulted in the foreseeable consequence of M.R.A. being deprived of her unconstitutional rights by an unmonitored and unsupervised AISD employee. This is the essence of the deliberate indifference standard under which AISD is clearly liable for § 1983 violations. *See Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 445 (5th Cir. 1997)* (holding that a school district could be held liable for supervisory failures resulting in the molestation of the student only if those failures manifested a deliberate indifference to the welfare of the school children.) (citing *Gonzalez v. Ysleta Independent School District*, 996 F.2d 745, 753–60 (5th Cir.1993).

74.     But for Defendants' failure to adopt a policy that would have supervised and monitored Defendant Maldonado, M.R.A. would not have been repetitively sexually assaulted and her constitutional rights would not have been violated. Defendant AISD's policies of not reviewing the bus camera footage and only requiring one adult on board on the bus was the moving force behind M.R.A's constitutional rights being violated. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 622, 623 (5th Cir. 2018).

75.     M.R.A.'s claims under § 1983 are actionable against Defendant Maldonado in his individual capacity as well as his official capacity as a state actor acting under the color of state law as an AISD employee. Defendant Maldonado's actions were objectively unlawful, unreasonable, and in violation of M.R.A.'s constitutional rights.

76.    It was Defendant Santamaria's responsibility to review school bus camera footage to ensure the safety, welfare, and rights of M.R.A.  Upon information and belief, in March of 2018, and possibly before, Defendant Santamaria and/or someone working under the direct supervision of this Defendant, witnessed the molestation and fondling of M.R.A. but did not report the incident as law requires.  Due to this breach of duty, the molestations continued over and over although it may have been stopped had AISD not had deliberate indifference to protecting the rights of the children.  Defendant Santamaria's actions and/or inaction, constituting deliberate indifference, were the proximate cause of M.R.A.'s mental anguish, emotional distress, psychological damage, physical pain, and deprivation of bodily integrity.  Perhaps in the alternative, Defendant Santamaria was following an AISD custom of not reviewing school bus videos.

77.    At all times relevant to this action and on all occasions of sexual assault by Defendant Maldonado of M.R.A, the school bus driven by Defendant Maldonado included a bus monitor, Defendant Lopez.  Upon information and belief, Defendant Lopez's presence was intended to ensure the safety, welfare, and rights of children in the care of Defendant AISD.  Upon further information and belief, in March of 2018, and possibly before, Defendant Lopez witnessed the molestation and fondling of M.R.A., but did not report the incidents as law requires.  Due to this breach of duty, the molestation continued.  Defendant Lopez's actions and/or inaction, constituting deliberate indifference, were the proximate cause of M.R.A.'s mental anguish, emotional distress, psychological damage, physical pain, and deprivation of bodily integrity.

78.    Perhaps in the alternative, Defendant Lopez's actions of leaving the bus driver alone with children was a common custom repeated by many other AISD school bus monitors.  AISD, furthermore, did not monitor its school bus monitors to see if they were doing their job including whether or not they stayed with the school bus driver and students.  AISD and the Board

failed to supervise its bus drivers.  In this regard AISD and the Board failed to supervise and train the bus monitors and supervisors of bus monitors to stay with bus drivers when with the students. Had the monitors been properly trained and supervised, M.R.A. would not have been repeatedly molested (by Maldonado's own admission at least TEN times in three continuous months).

79.    Prior to the sexual assaults on M.R.A. Detective Alex Phillips repeatedly and purposefully downplayed AISD student sexual assaults, failed to timely gather evidence resulting in loss of crucial evidence, failed to gather evidence, mislead parents and others that AISD employees who committed sexual assaults of AISD children were not guilty, and created police reports designed to result in no criminal charges or convictions of AISD employees who had sexually assaulted AISD students and falsely indicated no fault by AISD. Police Chief Ashley Gonzalez was aware of Detective Alex Phillips activities and purposefully did not discipline, adequately retrain him, or fire him or create better policies, practices, customs, and procedures to correctly investigate AISD student sexual assault leading to convictions.

80.    From these facts, it is clear that the School District had actual practiced and customs in place that were so woefully inadequate to constitute deliberate indifference, or alternatively were abandoned and not followed with respect to M.R.A.  Such failures to adopt, implement, develop, and enforce adequate policies and/or failures to follow existing policies constitute deliberate indifference, were the proximate cause of M.R.A.'s mental anguish, emotional distress, psychological damage, physical pain, and loss of bodily integrity.

**B.    TITLE IX**

81.    Plaintiff incorporates by reference all the foregoing allegations contained in all the paragraphs above as fully set forth herein.

82.    The sex-based harassment described in the foregoing allegations was so severe,

frequent, and objectively offensive that it deprived M.R.A. of access to educational opportunities or benefits provided by the school. AISD receives federal funds.

83.     The Defendants created and subjected M.R.A. to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because: (1) M.R.A. is a member of a protected class; (2) she was subjected to sexual harassment in the form of a sexual assault by her bus driver; (3) she was subjected to harassment based on her sex; (4) and she was subjected to a hostile educational environment created by Defendant AISD's lack of policies and procedures to protect her and its failure to investigate properly.

84.     Title IX jurisprudence, as well as Department of Education regulations, have long recognized that a single event of rape constitutes harassment so severe, pervasive, and offensive that it deprives its victims of access to the educational opportunities provided by the school:

> The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical. Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe. For instance, a single instance of rape is sufficiently severe to create a hostile environment.[11]

85.     The Department of Education's Office of Civil Rights, through the "Dear Colleague Letter" and accompanying jurisprudence[12] clearly mandates that school personnel must understand their legal obligations to address harassment based on sex, gender, and gender stereotypes. The *Guidance* notes that even if a District refers a case for investigation to local law enforcement, the District still maintains a duty to complete its own inquiry after the police investigation concludes. Importantly, the School District is required to provide prompt and effective action, and provide

---

[11]U.S. Dep't of Educ., Office of Civil Rights, "Dear Colleague Letter (Apr. 4, 2011). https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf (last visited Apr. 28, 2020)

[12] *See, e.g.*, *Franklin v. Gwinner Cty. Pub. Sch.*, 503 U.S. 60, 75 (1992) (applying Title VII principles to teacher upon student sexual harassment at a school); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (addressing teacher upon student sexual harassment and when liability arises because a school district does not address the harassment); *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) (addressing student upon student harassment).

information about the victim's procedural rights, and especially a grievance process. Additionally, if a student has been a victim of sexual harassment, the school district has a number of potential interventions, including the provision of or paying for counseling or working with a tutor to make up work. Moreover, an essential part of a school district's duty is to provide ongoing assessment and follow up inquiries as to the ineffectiveness or effectiveness of any remedy provided.

86.    Regardless, in the circumstances giving rise to M.R.A.'s claims and others, a significant history of faculty-on-student harassment, resulting from deliberate indifference, has been permitted and allowed to continue at AISD for years to the present.

87.    Defendants and their affiliated officials had actual knowledge of the sexual assault and molestation of M.R.A. and previous sexual assaults and molestations of AISD students (*supra*). Defendant AISD and the Board also had knowledge of its policies, or lack thereof, that caused these assaults by its failure to investigate and discipline Plaintiff's attacker in a timely manner and consistent with its own policy and federal and state law on multiple occasions.

88.    Defendants' failure to investigate and respond adequately to prior reports of sexual assault against students created an environment that put M.R.A. and other minor students at enhanced risk of being sexually assaulted.

89.    Defendants' failure to respond promptly and appropriately to the sexual harassment resulted in Plaintiff's, on the basis of her sex, exclusion from participation in, being denied the benefits of, and being subjected to discrimination in the Defendant AISD's education program in violation of Title IX.

90.    Defendants failed to take immediate, effective remedial steps to resolve the instances of sexual harassment and instead acted with deliberate indifference toward students who brought sexual assault allegations, including M.R.A.

91.     Defendant AISD persisted in its actions and inaction even after it had actual knowledge of the harm suffered by its students including M.R.A.  Even where action was taken to remedy the hostile education environment in response to the numerous instances of sexual assault, these actions were inadequate and/or completely insufficient.

92.     Prior to 2018, and unbeknownst to Plaintiffs, Defendant Phillips, Defendant Gonzalez, Defendant AISD and AISD PD conducted its investigations of sexual assault with the goal of covering up the incident rather than bringing justice to victims.

93.     The numerous incidents of Detective Phillips closing files for lack of evidence of sexual assault despite medical conclusions and evidence to the contrary demonstrate that Defendants named herein intentionally created a condition that ensured that reports of sexual assault would not result in meaningful investigations into such allegations, thereby discouraging other victims from coming forward.  Therefore, Defendants' deliberate indifference to its students' well-being cultivated an environment which emboldened sexual predators, such as Maldonado to act with the security that such allegations would not be investigated.

94.     Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

95.     M.R.A. has suffered emotional distress and psychological damage as a direct and proximate result of Defendant AISD's deliberate indifference to her rights under Title IX.

C.     **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

96.     Plaintiff incorporates by reference all the foregoing allegations contained in all the

paragraphs above as fully set forth herein.

97.    Defendant Maldonado's actions caused intentional and severe emotional distress to M.R.A. and his conduct was extreme and outrageous.  Defendant Maldonado's actions were outrageous and extreme because he knew he was in a position of authority and that M.R.A. was susceptible to emotional distress as a minor.  Defendant Maldonado's actions proximately caused M.R.A.'s emotional distress.

### D.    ASSAULT AND BATTERY

98.    Plaintiff incorporates by reference all the foregoing allegations contained in all the paragraphs above as fully set forth herein.

99.    As a pendent state cause of action, at all times material and relevant herein, Defendant Maldonado, by acts and/or omissions and under color of state law did then and there by acts and/or omissions, intentionally, knowingly and/or recklessly cause severe personal injury to Plaintiff through unconsented sexual physical contact.

100.    Under Texas law, the cause of action for offensive sexual conduct is simply one for assault and battery.  Consequently, Plaintiff alleges that Defendant Maldonado committed an assault and battery upon Plaintiff.  Said conduct of Defendant Maldonado was committed intentionally, knowingly, and/or recklessly and was the proximate cause of the personal injuries and emotional injuries to Plaintiff.  Said injuries were the direct and immediate consequences of Defendant Maldonado's wrongful acts, and a natural and direct result of the assault and battery.

101.    Defendant Maldonado committed an assault and battery upon Plaintiff by intentionally and/or knowingly causing physical sexual contact with Plaintiff.  Defendant Maldonado knew or should have reasonably believed that Plaintiff would regard the contact as offensive and/or provocative.  Defendant Maldonado knew or should have known that the acts, as

previously described, were provocative, harmful, and/or offensive to Plaintiff. Said acts of Defendant Maldonado were committed intentionally, knowingly, and/or recklessly, and they were the proximate cause of bodily and emotional injuries to Plaintiff. Furthermore, said injuries were the direct and immediate consequences of Defendant Maldonado's tortious acts and a natural and direct result of the sexual conduct.

102.    At no time was Defendant Maldonado privileged to take the action described herein as necessary. Moreover, Defendant Maldonado assault and battery of Plaintiff was unlawful and not objectively reasonable.

## VI.    ATTORNEY'S FEES

103.    Plaintiff would show that, pursuant to 42 U.S.C. § 1988(b) and other law, Plaintiff is entitled to recover from Defendants an award of reasonable attorney's fees and expenses.

## VII.    DAMAGES

104.    As a direct and proximate result of Defendants actions and omissions, M.R.A. suffered the following injuries and damages:

    a.    physical pain and suffering in the past;

    b.    mental anguish in the past and future;

    c.    reasonable and necessary expenses of medical and psychological treatment in the past and future; and

    d.    physical, mental, and emotional impairment in the past and future.

## VIII.    PRAYER

105.    For the above reasons, Plaintiff CRYSTAL AYON a/n/f M.R.A. prays that Defendants be cited to appear and answer herein and that, upon final trial hereof, Plaintiff have judgment against Defendants, jointly and severally, for the following:

a.  Actual damages in an amount to be proven by the evidence at trial;

b.  Pre-judgment and post judgment interest;

c.  Costs of suit;

d.  Attorney's fees in an amount to be proven by the evidence at trial;

e.  Punitive damages in an amount to be proven by the evidence at trial; and

f.  All such other and further relief to which Plaintiff may show herself justly entitled.

Respectfully submitted,

**AMARO LAW FIRM**

_____
R. James Amaro
SBN: 24036134
Matthew A. Elwell
SBN: 24082962
2500 E. TC Jester Blvd., Ste. 525
Houston, Texas 77008
713.864.1941 (Tel.)
713.864.1942 (Fax)
fax@amarolawfirm.com

*/s/ Randall L. Kallinen*
KALLINEN LAW PLLC
Randall L. Kallinen
State Bar of Texas No. 00790995
511 Broadway Street
Houston, Texas 77012
Telephone:     713.320.3785
FAX:             713.893.6737
E-mail:          AttorneyKallinen@aol.com

**ATTORNEYS FOR PLAINTIFF**